# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 11-24619-CIV-UNGARO-TORRES

MANGO'S TROPICAL CAFE, INC.,

      Plaintiff,

vs.

MANGO MARTINI RESTAURANT & LOUNGE,
INC., LAKES CAFE SPORTS BAR & GRILL,
INC. d/b/a MANGO MARTINI RESTAURANT
AND LOUNGE, JOSE FLORES, CHARLIE
RODRIGUEZ, and HUMBERTO PEREZ,

      Defendants.
_____/

## ORDER ON PLAINTIFF'S
## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

      This matter is before the Court on Plaintiff Mango's Tropical Cafe, Inc.'s ("Plaintiff" or "Mango's") Emergency Motion for Temporary Restraining Order ("TRO") and Order to Show Cause Why Preliminary Injunction Should Not Issue. [**D.E. 3**]. The Honorable Joan A. Lenard referred this motion to the undersigned Magistrate Judge for a hearing on December 29, 2011. [D.E. 16].[1] After considering the motion and related filings, the testimony of the witnesses and the documents admitted into evidence at the hearing, the oral arguments of counsel, and the entire record in this case, Plaintiff's motion for a TRO will be Denied, for the reasons set forth below. The

---

[1] The district judge to whom this case is assigned, the Honorable Ursula Ungaro, was absent from the district when the emergency motion was filed; hence Judge Lenard issued the Order referring the matter to the undersigned.

denial of this motion does not preclude Plaintiff from pursuing its motion for a preliminary injunction after further factual development.

## I. BACKGROUND[2]

Plaintiff is suing Defendants Mango Martini Restaurant & Lounge ("Mango Martini"), Inc., Lakes Cafe Sports Bar & Grill, Inc. d/b/a Mango Martini Restaurant and Lounge ("Lakes Cafe"), Jose Flores ("Flores"), Charlie Rodriguez ("Rodriguez"), and Humberto Perez ("Perez") (collectively, "Defendants")[3] for federal trademark infringement, federal unfair competition, common law unfair competition, and trademark dilution under federal and Florida statutory law. [D.E. 1 (Emergency Verified Complaint for Trademark Infringement, Unfair Competition and Related Claims)]. Plaintiff alleges that Defendants' advertisement and promotion of bar, nightclub, and restaurant services under the name "Mango Martini" violates Plaintiff's rights in and to its longstanding and federally-registered family of Mango's trademarks ("Mango's Marks").

---

[2] The facts, which are largely undisputed and are summarized in this Report and Recommendation, are based on: (1) the testimony of Plaintiff's Chief Operating Officer, Joshua Wallack ("Wallack"), in the form of his Declaration [D.E. 6] which was admitted at the hearing as well as his oral testimony; (2) the oral testimony of Jose Flores, Vice President and corporate representative for both Defendant corporations; (3) the Declaration of defense counsel Oliver Alan Ruiz [D.E. 17-1] to the extent it provides exhibits that we admitted into evidence at the hearing, including copies of web site pages maintained by third parties that were available to the public through the Internet on December 28 or 29, 2011, and copies of public records maintained by government agencies; and (4) all other attachments to the documents filed in this matter.

[3] It appears that only the corporate Defendants had been served at the time the hearing was held.

Plaintiff owns and operates Mango's Tropical Cafe, a well-known restaurant and nightclub on South Beach that has been in continuous operation for over 20 years. Mango's Tropical Cafe, also widely known simply as Mango's, offers a Caribbean tropical atmosphere filled with reggae music, salsa dancing, and gourmet cuisine.

Plaintiff owns valid U.S. Trademark Registrations in five marks. [D.E. 1 (Complaint), Exhibits A - E]. Plaintiff utilizes the Mango's Marks in connection with the operation of its restaurant and nightclub. The Mango's Marks are displayed prominently on all business signage, menus, clothing items, pre-packaged food products, music and other memorabilia, a practice followed since commencing operation of Mango's Tropical Cafe in 1991. Each of the trademark registrations features a specific, stylized version of the mark which consists of a prominently placed design of a parrot inside a circle, together with a stylized version of the word "Mango's" above the circle and the words "Tropical Cafe"[4] below the circle. The first use of Plaintiff's mark occurred in 1991.

Defendants' restaurant and bar, Mango Martini, is located in Miami Lakes, Florida. The name "Mango Martini" was selected during a meeting that included Flores, the general manager of Classica, a Latin radio station, and others. Classica's general manager came up with the name, which was associated with the cocktail, the mango martini. Defendants registered the fictitious name "Mango Martini Restaurant and Lounge" with the Florida Secretary of State in mid-July 2011, and articles of incorporation were filed shortly thereafter. The internet domain name

---

[4] One of the trademark registrations substitutes the words "Mambo Bar" for "Tropical Cafe." [D.E. 1, Exhibit B].

www.mangomartinimiami.com was registered in September 2011. Defendants did not review trademark registrations for the name nor did they consult with trademark counsel prior to selecting that name.

Defendants recently changed the name of their establishment from "Lakes Cafe Sports Bar & Grill" to "Mango Martini." Flores testified that the business began operating under the new name approximately four months ago. Though they have begun operations, as evidenced also by pictures taken of the operating business by Plaintiff's private investigator, Defendants have announced and publicized on their website the "grand opening" of Mango Martini for New Year's Eve, December 31, 2011.

On December 18, 2011, Plaintiff first became aware of the existence of Defendants and their website located at www.mangomartinimiami.com after Defendants offered a discount coupon for brunch at Mango Martini through the Groupon website, the online "deal of the day" website. Plaintiff notified Defendants of their infringing conduct, demanded they cease and desist, then promptly filed the pending lawsuit.

Plaintiff contends that Defendants' use of the mark "Mango Martini" to identify their services infringes Plaintiff's trademark rights. In particular, Plaintiff claims that Defendants' use of the dominant portion of Mango's business and domain names (the term "Mango's") creates confusion and deception as to the source and origin of Defendants' restaurant and bar services, and unfairly trades on the valuable goodwill embodied in the Mango's Marks.

Because Defendant's announced grand opening is scheduled to be held during its New Year's Eve event on December 31, 2011, Plaintiff seeks to immediately enjoin Defendants' use of the mark "Mango Martini."  Specifically, the immediate relief Plaintiff seeks is a TRO prohibiting Defendants from using "Mango Martini" in any way in connection with their New Year's Eve event; from committing any acts calculated to cause the public to believe that Defendant's Mango Martini is sponsored by, affiliated with, or connected with Plaintiff; from further diluting and infringing Plaintiff's trademarks and damaging its goodwill; and from otherwise competing unfairly with Plaintiff in any manner.  [D.E. 3 at 1-2].  To that end, Plaintiff moves for a TRO and an order to show cause why a preliminary injunction should not be issued prior to the event.

Upon referral of the matter, an immediate evidentiary hearing was convened and Defendant was ordered to respond to the motion prior to the hearing.  The Court was presented with supporting evidence from both sides, including the testimony of Plaintiff's Chief Operating Officer Joshua Wallack and Defendant's corporate representative Jose Flores.

## II.   ANALYSIS

### A.   *Motion for Temporary Restraining Order*

Injunctive relief is expressly authorized by the Lanham Act, 15 U.S.C. § 1051, *et seq.*, in cases of trademark infringement and unfair competition.  *See* 15 U.S.C. § 1116(a); *see also* Fed. R. Civ. P. 65(b).  A temporary restraining order is an appropriate remedy in a situation where a party is facing immediate irreparable harm that will

likely occur before a hearing for preliminary injunction can be held. *See* 11A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2951 (2d ed. 1995).

To obtain a preliminary injunction, Plaintiff must demonstrate that: (1) there is a substantial likelihood of success on the merits of the underlying case; (2) Plaintiff will suffer irreparable harm in the absence of injunctive relief; (3) the harm suffered by Plaintiff in the absence of an injunction would exceed the harm suffered by Defendants if the injunction issued; and (4) an injunction would not disserve the public interest. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002); *see also Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("[b]ecause a preliminary injunction is 'an extraordinary and drastic remedy,' its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion."). However, "[i]f the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief." *1-800 Contacts*, 299 F.3d at 1247 (citing *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001)).

The goal of a preliminary injunction is to prevent irreparable harm and to "preserve the district court's power to render a meaningful decision after a trial on the merits." *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). "[T]he most compelling reason in favor of [granting a preliminary injunction] is the

need to prevent the judicial process from being rendered futile by defendant's action or refusal to act." *Id.* at 573; *see also All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) ("Preliminary injunctions are issued when drastic relief is necessary to preserve the *status quo*.").

### B.     *Federal Trademark Infringement and Unfair Competition Claims*

#### *1.     Likelihood of Success on the Merits*

To prevail on its trademark infringement claim, Plaintiff must demonstrate (1) that its mark has priority and (2) that Defendants' mark is likely to cause consumer confusion. *See Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); *see also* 15 U.S.C. § 1114(1).[5] To prevail on its unfair competition claims, Plaintiff must similarly demonstrate a likelihood of confusion. *See Babbit Elecs, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994); *see also* 15 U.S.C. § 1125(a). The only issue in dispute is whether Plaintiff has presented compelling evidence that consumers will be confused about the relationship or affiliation between Plaintiff's restaurant and bar services and Defendants' restaurant and bar services in light of Defendants' use of "Mango Martini" in its business and domain names.

We consider the following seven factors in assessing whether or not a likelihood of consumer confusion exists: (1) type of Plaintiff's mark; (2) similarity of the parties' marks; (3) similarity of the products or services the marks identify; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media used; (6) existence of actual confusion; and (7) Defendants' intent. *See Frehling*,

---

[5]     Plaintiff's ownership of valid trademark registrations for each of the Mango's Marks is not in dispute.

192 F.3d at 1335; *Lone State Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997) (remanded so that district court could fully consider all seven factors in determining the likelihood of confusion); *Michael Caruso & Sons, Inc. v. Estefan Enters., Inc.*, 994 F. Supp. 1454, 1458 (S.D. Fla. 1998). Of these, the type or strength of mark and evidence of actual confusion are the most important. *See Frehling*, 192 F.3d at 1335.

      a.    Strength of Plaintiff's Mark

We classify the type of mark Plaintiff has to determine whether it is strong or weak. *Id.* "The stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives." *Id.* There are four categories of marks: generic, descriptive, suggestive, and arbitrary. *Id.*

A generic mark, which refers to a class of which an individual service is a member (e.g., "liquor store" used in connection with the sale of liquor), is the weakest type and is not entitled to protection. *Id.* Descriptive marks describe a characteristic or quality of an article or service (e.g., "vision center" denoting a place where glasses are sold). *Id.* Suggestive marks suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive (e.g., "penguin" would be suggestive of refrigerator). Finally, an arbitrary mark is a word or phrase that bears no relationship to the product (e.g., "Sun Bank" is arbitrary when applied to banking services) and is the strongest of the four categories. *Id.* at 1335-36.

Another important factor to consider when gauging the strength of a mark is the degree to which third parties make use of the mark. *Id.* at 1336. The less third parties use the mark, the stronger it is and the more deserving of protection. *Id.*

Here, Plaintiff argues that its Mango's Marks are arbitrary when used to identify restaurant and bar services because they have no connection to such services. Thus, Plaintiff claims, they are distinctive and strong marks.

On this abbreviated record, we would instead classify the mark as suggestive which receives less trademark protection than an arbitrary mark. The term "Mango's" could reasonably connote a food and drinking establishment in South Florida, a geographic location with a warm climate in which mango trees are common and where mangoes are used in any number of recipes.

In any event, the term "mango" is a common English word and "even arbitrarily applied common terms are of weaker trademark significance." *Michael Caruso*, 994 F. Supp. at 1459 (citing *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260 (5th Cir. 1980), in which the court observed that although a common term's "application . . . may be arbitrary, it is still not to be accorded the same degree of protection given such coined and fanciful terms as 'Kodak' or 'Xerox.'"). As the court in *Michael Caruso* further explained:

> A mark incorporating a common English word is inherently weaker than a mark consisting of fanciful and fictitious terms. *See Dieter*, 880 F.2d at 327 ("Generic terms represent the weaker end of the [trademark] spectrum, and arbitrary terms represent the stronger."); *Sun Banks of Fla. v. Sun Fed. Sav. & Loan*, 651 F.2d 311, 316 (5th Cir. 1981) (common English term is a weak mark); *Alpha Indus., Inc. v. Alpha Tube & Shapes, Inc.*, 616 F.2d 440, 445–46 (9th Cir. 1980) ("A 'weak' mark is a mark that is a meaningful word in common usage or is merely a

>   suggestive or descriptive trademark. A strong mark is entitled to a
>   greater degree of protection than is a weak one, because of its unique
>   usage."). The rationale underlying this principle is that courts should not
>   grant the holder of a mark that consists of a common English word a
>   monopoly on that term outside the user's field.

*Id.* at 1458-59.

But even if we found Plaintiff's mark to be arbitrary, its strength is considerably weakened by extensive third-party use of the word "Mango" or a variation thereof in connection with restaurant and bar services. *See, e.g., Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 316 (5th Cir. 1981) (extensive third-party use of the word "Sun" was "impressive evidence" that there would be no likelihood of confusion between Sun Banks and Sun Federal; citing cases)[6]; *Michael Caruso*, 994 F. Supp. at 1459-60 (extensive third-party use of the term "bongo" weakens the mark). Defendants have provided competent evidence of multiple instances in which a variation of the word "Mango" was used in connection with restaurant and bar services in the State of Florida and elsewhere.

One example, "Mango's Restaurant and Lounge" on Las Olas Boulevard in Ft. Lauderdale [D.E. 17-1 at 4], has been operating under that name for almost as long as Plaintiff has been in existence. In fact, Wallack testified that he was regularly asked if the Las Olas establishment was affiliated with his company.

Wallack explained why Plaintiff had not pursued an infringement action against the Las Olas establishment: Wallack's father, who founded Mango's Tropical Cafe in

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

1991, reached an agreement with the owner of the Las Olas shortly after it opened in 1993 whereby Plaintiff would forego any infringement action if the Ft. Lauderdale establishment did not expand to another location.

But whatever the reason, a business with the term "Mango's" in its name that offers the same type of services Plaintiff does, and which causes actual confusion among consumers, has been operating for approximately 18 years in a city in South Florida that Wallack admitted was, like South Beach, a South Florida tourist destination.

Defendants also provided printouts of web sites showing that the term "Mango's" or its equivalent is used frequently by entities in Florida in connection with restaurant and bar services. In addition to the Las Olas "Mango's Restaurant and Lounge," other examples include: "Mangos Restaurant & Tiki Bar," "Mangoes" restaurant, catering & nightclub in Key West, "Mango's" catering and restaurant in Orlando, "Mango's Dockside Bistro," "Mango Grill & Wine Bar" in Hernando, "Mango Mangos Beachside Bar & Grill" in Saint Johns, "Mango Bistro" in Englewood, and so on. [D.E. 17-1, Composite Exhibit A].[7]

Defendants also provided evidence that numerous trademark registrations had been issued for the term "Mango's" or an equivalent term in connection with restaurant and bar services. [D.E. 17-1, Composite Exhibit B].

---

[7]     Although Defendants were unable to verify whether each such entity is in fact operating, given the expediency with which this matter came before the Court for a TRO hearing, these printouts provide *prima facie* evidence that the term "Mango" or a variation thereof is often used in connection with restaurant and bar services.

Wallack countered that Plaintiff was unaware of these entities. He also proffered three instances in which his company pursued alleged infringers (in Spain, Equador, and New York City) in order to demonstrate that Plaintiff does, within the confines of its "limited resources," vigorously enforce its trademark rights when it becomes aware of infringing activity.

But the fundamental question remains: is the third-party use of the term "Mango's" (or a variation thereof) extensive enough that consumers are not likely to be confused by Defendants' use of the word "Mango" in its business name? We think the evidence before us shows that the third-party use is sufficiently extensive that consumers are not likely to be confused between Mango's Tropical Cafe and Mango Martini.

We conclude that Plaintiff's use of a common term, combined with extensive third-party use of that term, render it unlikely that Plaintiff's Mango's Marks will be found to have strong trademark significance. *See Michael Caruso*, 994 F. Supp. at 1460; *Sun Banks*, 651 F.2d at 316-317.

      b.    <u>Similarity of the Parties' Marks</u>

To determine whether the parties' marks are similar, we compare the overall impression the marks create including sound, appearance, and manner in which they are used. *See Frehling*, 192 F.3d at 1337. The marks are examined in their entirety rather than simply by comparing the similar terms or dominant features. *See Michael Caruso*, 994 F. Supp. at 1460 ("The mere fact that both marks incorporate a form of the common word 'bongo' does not render the marks similar[]"; collecting cases); *Little*

*Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571 (6th Cir. 1987) ("It is the impression which the mark as a whole creates on the average reasonably prudent buyer and not the parts thereof which is important[]"; quoting J. Thomas McCarthy, *Trademarks and Unfair Competition* § 23:15 (2d ed. 1984)).

We find the parties' marks to be dissimilar as a whole. Plaintiff uses the term "Mango's" in the possessive, in a stylized fashion, together with a prominently placed design of a parrot inside a circle and the words "Tropical Cafe" below the circle. By contrast, Defendants mark used the term "Mango" in a singular fashion, in combination with the word "Martini," with little or no stylization. In addition, the color scheme is vastly different.

We think the words "Mango Martini" create an entirely different connotation when compared to Plaintiff's Mango's Marks. *See, e.g., Little Caesar*, 834 F.2d at 571-72 (although the court found the term "Caesar" was probably arbitrary and thus the plaintiff had a relatively strong mark, the differences in sound and appearance between the parties' marks were obvious, rendering the marks sufficiently dissimilar and distinct to make confusion unlikely); *Michael Caruso*, 994 F. Supp. at 1460-61 ("Bongo" and "Bongos Cuban Cafe" had distinct appearances and sounds; differences in the marks, and the decor at Defendants' establishments, the food served, much of the souvenir merchandise, and use of the words "Bongos" and "Cuban Cafe" all worked to clearly convey different commercial impressions). We thus do not find a high degree of similarity between the marks such that consumers would likely be confused by the two.

      c.      <u>Similarity of Services</u>

We find (and Defendants essentially concede) that the parties provide similar services, i.e., restaurant and bar services. Any differences such as the breakfast service at Mango Martini are negligible.

      d.      <u>Similarity of Retail Outlets (Restaurants) and Customers</u>

There is insufficient evidence in the record to determine the extent of similarity between the parties' respective restaurants/bars and their customers. Flores credibly testified that Defendants cater to an older crowd. He noted the elegant dress of the staff at Mango Martini, the upscale decor, the use of reservations, and the classical "Latin" music played there, as opposed to the scantily-clad dancers, casually-dressed customers, and informal atmosphere that prevailed at Mango's Tropical Cafe.

Little evidence was presented as to Plaintiff's establishment or clientele. The copy of Plaintiff's webpage [Plaintiff's Exhibit 2] does depict scantily-clad young men and women who may be dancers as well as younger people who appear to be customers. Just based on the record submitted on the motion, it is likely that the Court will not find these establishments to be materially similar. However, given the lack of evidence regarding this factor at this early stage, we find it neither supports nor militates against a finding of confusion by consumers based on the parties' marks.

      e.      <u>Similarity of Advertising Media</u>

Both Plaintiff and Defendants advertise over the internet, through social media web sites, through their respective business web sites, and on the radio. There is evidence that the parties advertise at least in part on different radio stations (Plaintiff on Power 96, Defendants on Classica). In addition, Plaintiff advertises in hotels on

South Beach and employs a multi-layer marketing strategy to target individuals who might be coming to South Florida, e.g., fans who might come to the area for a big sporting event. There is insufficient evidence in the record, though, to find that consumers are or are not confused by the parties' marks on the basis of their advertising methods.

        f.      <u>Actual Confusion</u>

Evidence of actual confusion is the best evidence of a likelihood of confusion but it is not a prerequisite to the issuance of a preliminary injunction. *See Frehling*, 192 F.3d at 1340. There is no evidence of actual confusion in the record before us. This factor cannot support a finding that consumers will be confused on the basis of the parties' marks.

        g.      <u>Defendants' Intent</u>

Plaintiff alleges that Defendants knowingly and deliberately appropriated Mango's Marks with the obvious intent to profit from Plaintiff's success. Plaintiff contends that Defendants had an infinite choice of possibilities when choosing a new name and new mark for their restaurant/bar, and that they had an obligation to determine whether the business name "Mango" was available for their use. The failure to do so, Plaintiff concludes, demonstrates Defendants' bad faith.

Based on the limited record before us, we do not find evidence of a willful intent to trade on Plaintiff's reputation and goodwill. We find Flores's explanation as to how the name "Mango Martini" was selected to be quite plausible. While Defendants may have been naive in their method of confirming the availability of the term "Mango" for

use by a business offering restaurant and bar services (we do not imply that there *was* any negligence or that the term was *not* available), there is simply no evidence on which we may conclude Defendants acted in bad faith. We have already mentioned evidence in the record showing that numerous restaurants and bars in Florida utilize the term "Mango" in their business names. This suggests that the word is common and cannot be appropriately exclusively by any one entity.

Based on our consideration of the seven factors in the likelihood of confusion test, we conclude that Plaintiff has not shown that there is a likelihood that consumers will confuse its services with Defendants'. As a result, Plaintiff does not have a substantial likelihood of success on the merits of its trademark or unfair competition claims.

Although the failure to show a likelihood of success on the merits is a sufficient basis to deny the motion for TRO as to the trademark infringement and unfair competition claims, we will briefly address the remaining elements for injunctive relief.

### 2.   *Irreparable Harm*

Plaintiff claims it is and will continue to suffer irreparable harm if Defendants are not immediately enjoined from using the Mango Martini mark. In addition to a loss of trade from Defendants' conduct, Plaintiff asserts injury to its reputation and goodwill that cannot be redressed through monetary relief.

Based on the evidence before us, we reject Plaintiff's contention of irreparable injury. Based on the testimony and copies of the parties' web pages, the New Year's Eve events appear to be dissimilar and the audiences targeted appear to be different.

Defendants have already sold all or nearly all their tickets for the big event. Plaintiff cannot, however, point to any evidence that the ticket sales have impacted its own business or reputation in any way. There has been no showing that any harm will befall Plaintiff should Defendants be allowed to proceed with the event on New Year's Eve using the name "Mango Martini." Even if there had been evidence of harm, Plaintiff has not satisfactorily shown that such harm could not be redressed through monetary relief. Thus, we conclude that this factor does not weigh in favor of issuance of an injunction.

### 3.  *Balance of Hardships*

Plaintiff claims it suffers injury to reputation and goodwill when customers are confused by Defendants' mark, especially in connection with the parties' respective New Year's Eve celebrations. But given the lack of evidence that any actual or potential customers who are or will be confused by Defendants' continued use of "Mango Martini," we cannot give much weight to this claim. On the other hand, Defendants claimed they would be damaged were an injunction to issue. However, Flores admitted that all the customers who had already purchased tickets to the New Year's Eve event would show up regardless of whether or not the name of the business were "Mango Martini." This factor does not weigh in favor of issuance of an injunction.

### 4.  *Public Interest*

Plaintiff argues that the public interest will be served if an injunction is issued because Defendants will be prevented from further deceiving or misleading the public through their use of the term "Mango Martini" in connection with their restaurant and

bar services. However, we have already determined that Plaintiff did not demonstrate a likelihood of consumer confusion based on the parties' marks. Thus, an injunction directed to Defendants' use of the mark would not serve any public interest. This factor does not weigh in favor of issuance of an injunction.

### C. *Trademark Dilution Claims*

"The trademark dilution remedy allows an owner of a uniquely famous trademark to prevent subsequent use of the mark even where there is no likelihood of confusion, as in cases involving completely different products." *Michael Caruso*, 994 F. Supp. at 1463 (discussing trademark dilution pursuant to 15 U.S.C. § 1125(c)(1)). Plaintiff claims that Defendants' continued use of its Mango's Marks would irreparably dilute Plaintiff's famous and distinctive trademarks and injure its business reputation as a provider of stellar bar and restaurant services. We have already determined that the parties' marks are dissimilar. We also determined that Plaintiff failed to show irreparable harm from Defendants' use of "Mango Martini." Accordingly, we conclude that Plaintiff is not substantially likely to succeed on the merits of its trade dilution claim.

### III. CONCLUSION

For the foregoing reasons, Plaintiff Mango's Tropical Cafe, Inc.'s Emergency Motion for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue [**D.E. 3**] is **DENIED in part** as follows:

1. Plaintiff's motion for a TRO is **DENIED**; and

2. Plaintiff's motion for an Order to Show Cause why a preliminary injunction should not issue is Deferred pending further factual development and a further evidentiary hearing if necessary.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 31st day of December, 2011.

EDWIN G. TORRES
United States Magistrate Judge